**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE**

**CIVIL ACTION NO. 16-5-DLB**

**LARRY AKERS**                                                     **PLAINTIFF**

**vs.**                         **<u>MEMORANDUM OPINION & ORDER</u>**

**NANCY A. BERRYHILL, Acting
Commissioner of Social Security**                                 **DEFENDANT**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and for the reasons set forth herein, hereby reverses and remands the decision of the Commissioner.

**I.**     **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff previously filed an application for Supplemental Security Income (SSI) alleging disability beginning July 30, 2007 that was denied by an ALJ on October 20, 2010. (Tr. 29-39). Plaintiff filed a new application for Disability Insurance Benefits (DIB) and SSI on August 24, 2012, alleging that he became disabled on August 21, 2012. (Tr. 17). Plaintiff's applications for SSI and DIB were denied on October 30, 2012. (Tr. 40-61). Plaintiff appealed, and his Request for Reconsideration was denied on January 9, 2013. (Tr. 95-97). Plaintiff then filed a Request for Hearing by Administrative Law Judge. (Tr. 98-99). On August 7, 2014, Administrative Law Judge (ALJ) Maria Hodges ruled that Plaintiff

1

was not entitled to DIB or SSI. (Tr. 17-25). The decision became final November 27, 2015, when the Appeals Council denied review of Plaintiff's claim. (Tr. 7-9). On January 15, 2016, Plaintiff filed suit in this Court. (Doc. # 1). The parties then filed Cross-Motions for Summary Judgment, which are now ripe for review. (Docs. # 11 & 12).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See Cutlip*, 25 F.3d at 286. Instead, the Court must affirm the Commissioner's decision if it is supported by substantial evidence even if the Court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). However, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right," even if the decision is supported by substantial evidence. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his or her past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy that the claimant can perform. For the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B.     The ALJ's Determination

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, August 21, 2012. (Tr. 19). At Step 2, the ALJ found that the Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, obstructive sleep apnea, adjustment disorder with depressed mood, and anxiety disorder not otherwise specified. (*Id.*)

At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equivalent to, 20 C.F.R. part 404, Subpart P, Appendix 1. (Tr. 20). The ALJ reviewed Plaintiff's medical records and determined that there was insufficient evidence to establish neurological deficits under section 1.04A or chronic cor pulmonale or organic mental disorder under section 3.10. (*Id.*) The ALJ further found that Plaintiff did not meet the requirements under Listing 12.04 (affective disorders) or 12.06 (anxiety-related disorders) because Plaintiff is able to manage many activities of

daily living, has moderately impaired social functioning, moderate deficiencies of concentration, persistence, and pace, and has never experienced deterioration or decompensation in work-like settings. (Tr. 20-21).

At Step 4, the ALJ concluded that Plaintiff has the residual functional capacity to perform a reduced range of light work. (Tr. 21-22). Plaintiff's limitations include:

> [S]it six hours in a workday, but for no more than two hours without interruption; stand six hours in a workday, but for no more than one hour without interruption; and walk six hours in a workday, but for no more than one hour without interruption. He can frequently reach, handle, finger, push, pull, operate foot controls, stoop, kneel, crouch, and crawl. He can never climb ladders, ropes, or scaffolds. He can occasionally balance and climb ramps and stairs. He can never work at unprotected heights. He can occasionally work with moving parts or operate a motor vehicle. He can frequently be exposed to humidity, wetness, dust, fumes, temperature extremes, vibration, and pulmonary irritants. He can work in loud noise. He is limited to simple, routine work, without high stress, defined as no production rates or strict time limits and only occasional contact with the public.

(*Id.*) Additionally, the ALJ concluded that the Plaintiff is unable to perform past relevant work as a construction laborer, carpentry helper, greens keeper, and general laborer because these jobs required medium to very heavy exertion and Plaintiff is limited to a range of light work. (Tr. 24).

With Plaintiff unable to perform past relevant work, the ALJ proceeded to Step 5, and found that there were a significant number of jobs in the national economy that Plaintiff could perform. (Tr. 24-25). In making this conclusion, the ALJ consulted a vocational expert (VE) and inquired whether jobs existed in the national economy for an individual of claimant's age, education, work experience, and residual functional capacity. (*Id.*) The VE testified that Plaintiff could find work at the light exertional level as a garment bagger (2,000 jobs regionally, 21,000 nationally) and sorter (2,000 jobs regionally, 33,000 nationally).

(*Id.*) The VE further listed sedentary jobs with the same nonexertional limitations, including work as an inspector (4,000 jobs regionally, 75,000 nationally) and sorter (4,500 jobs regionally, 48,000 nationally). (*Id.*) Based on these findings, the ALJ concluded that Plaintiff was capable of adjusting to other work and therefore "not under a disability, as defined in the Social Security Act." (Tr. 25).

### C.     Analysis

Plaintiff advances two arguments on appeal. First, he claims that the ALJ's determination of his residual functional capacity is not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ erred by finding the same residual functional capacity as when Plaintiff's claim was denied in 2010, despite finding different severe impairments in this proceeding; and that the ALJ erred by relying on the testimony of the non-examining physician. Second, Plaintiff claims that the ALJ erred in relying on the testimony of the VE about whether he could perform other work in the national economy because the VE's testimony was based on an erroneous hypothetical. In particular, Plaintiff argues that the limitations the ALJ posed to the VE were incorrect because his residual functional capacity should have been lower; and that the ALJ misidentified his level of education and, as a result, the VE's conclusion about work that Plaintiff could perform in the national economy is not supported by substantial evidence. These arguments will be addressed in turn.

### 1.     The ALJ's determination of residual functional capacity is supported by substantial evidence.

Plaintiff argues that the ALJ's determination of residual functional capacity is not supported by substantial evidence because it is the same as the previous ALJ's

determination despite this ALJ having found different severe limitations. While it is true that the previous ALJ found severe impairments of degenerative disc disease, depression, and anxiety (Tr. 31), and the current ALJ found severe impairments of degenerative disc disease of the cervical and lumbar spine, obstructive sleep apnea, adjustment disorder with depressed mood, and anxiety disorder not otherwise specified (Tr. 19), those differences do not automatically mean that the ALJ's residual functional capacity assessment is not supported by substantial evidence. *See Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (a finding of severe impairment at Step 2 does not require a specific residual functional capacity finding); *Adams v. Comm'r of Soc. Sec.*, No. 4:13-cv-22, 2014 WL 3368692, at *16 (E.D. Tenn. July 9, 2014) ("A finding that an impairment is severe at step two does not necessarily require that the ALJ include greater limitations in the RFC specific to that impairment, as the limitations in the RFC may adequately address that impairment."). As the Sixth Circuit has explained, residual functional capacity describes "what a claimant can do, not what maladies a claimant suffers from–though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). A "severe impairment may or may not affect [a claimant's] functional capacity to do work," but "[o]ne does not establish the other." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (internal quotation marks omitted). As a result, different findings at Step 2 can result in the same residual functional capacity assessment at Step 4 where the claimant's functional limitations are the same.

In accordance with the state agency assessment, the ALJ concluded that "[t]he overall record does not establish significant improvement or worsening in the claimant's

impairments" since the previous determination of residual functional capacity, meaning that Plaintiff did not have additional functional limitations. (Tr. 24). Plaintiff argues that his overall condition had worsened and that his residual functional capacity was more limited. But there is substantial evidence to show that Plaintiff's overall condition had not worsened, and that his residual functional capacity had not decreased. For those reasons, substantial evidence in the record supports the ALJ's findings.

An MRI on April 23, 2012 revealed that Plaintiff had bulges with mild to moderate stenosis in his cervical spine. (Tr. 648). In June of 2012, Plaintiff had decreased sensation in his left fourth and fifth fingers, but had normal gait, normal deep tendon reflexes, and normal fine motor skills. (Tr. 465). At two physician visits in August of 2012, Plaintiff continued to report numbness in his left arm and tingling in his two left fingers and was found to have lumbar spine tenderness, but was otherwise normal and had experienced a 50% improvement in his pain with medication. (Tr. 262-264, 265). In March of 2014, Plaintiff had normal range of motion in his cervical and lumbar spine and showed no neurological deficits. (Tr. 527).

Plaintiff's sleep apnea, which was diagnosed in 2010, was treated with a CPAP machine. (*See* Tr. 387-88). Plaintiff complained of daytime sleepiness and fatigue in February of 2014 and again in June, but his pulmonary function was normal and in June no treatment was recommended. (Tr. 511-13).

When Plaintiff was diagnosed with an adjustment disorder with depressed mood in October of 2012, his psychiatrist reported that he was pleasant and cooperative, that his attention, concentration, memory, and thought processes were normal, and that his mood and affect were fair. (Tr. 474). The evaluating psychologist opined that Plaintiff could

understand, remember, and carry out simple instructions involving one to two-step commands. (Tr. 477). As a whole, the medical record therefore reveals that Plaintiff did not have additional functional limitations, even though he did have some additional symptoms. 20 C.F.R. § 404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled").

Plaintiff also argues that the ALJ's reliance on the opinion of the non-examining physician, Dr. Jack Reed, was improper because Dr. Reed did not review the complete record. Plaintiff's reliance on *Jones v. Astrue*, 808 F. Supp. 2d 993 (E.D. Ky. 2011), for the proposition that "the opinions of non-reviewing examiners who did not review the complete record [can]not be used to support the decision denying benefits," (Doc. # 11-1 at 11), is misplaced. "Th[at] aspect of *Jones*'s holding is no longer good law." *Mock v. Colvin*, No. 15-cv-02, 2016 WL 4626580, at *5 (E.D. Ky. Sept. 2, 2016); *see, e.g.*, *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1002 (6th Cir. 2011) ("There is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record."); *Fry v. Comm'r of Soc. Sec.*, 476 F. App'x 73, 75 (6th Cir. 2012) (same). Instead, "the ALJ's only obligation is to provide 'good reasons' for giving weight to the non-examiner's opinions." *Mock*, 2016 WL 4626580, at *5 (quoting *Helm*, 405 F. App'x at 1000)).

The ALJ provided "good reasons" for giving weight to Dr. Reed's opinion. Dr. Reed's opinion is consistent with the overall record, which "does not establish significant improvement or worsening in the claimant's impairments." (Tr. 24; *see supra* pp. 6-7). The more consistent an opinion with the overall record, the more weight it is due. 20 C.F.R. §

404.1527(c)(4). Dr. Reed examined relevant medical evidence, which included normal results from several physicals that took into consideration Plaintiff's cervical spine stenosis and his complaints of left arm pain. (Tr. 80). In light of Plaintiff's normal range of movement of his back and neck, normal sensation and gait, normal motor strength testing, and normal coordination, Dr. Reed concluded that the new evidence was immaterial to the residual functional capacity. (*Id.*)

Plaintiff also argues that Dr. Reed's opinion is inconsistent with regulations governing medical opinions of non-examining physicians because Dr. Reed did not discuss Plaintiff's symptoms, did not include a diagnosis, and did not provide a sufficient supporting opinion. (Doc. # 11-1 at 10-11). None of those arguments undermine the ALJ's conclusion. First, Dr. Reed did note Plaintiff's symptoms of neck and left arm pain as well as tenderness in the lumbar spine. (Tr. 80). Second, Dr. Reed did discuss the diagnosis of the MRI of Plaintiff's spine, including "DJD with herniation and stenosis." (*Id.*) Moreover, the regulations emphasize that the medical opinion should "reflect judgments about the nature and severity of [Plaintiff's] impairments" and "present relevant evidence . . . particularly medical signs and laboratory results" as supporting explanations, which Dr. Reed's opinion did–he referenced numerous findings of normal range of motion, normal sensation, normal motor strength and coordination, and normal gait. (*Id.*)

In addition to this evidence, the ALJ's opinion is also supported by her finding that Plaintiff is not generally credible. The ALJ noted that Plaintiff told the evaluating psychologist that when he was laid off, he was angry that others with less experience were called back when he was not. (Tr. 472). The ALJ found that that "indicate[s] that [he] believed he was capable to return to his past work." (Tr. 23). Indeed, Plaintiff had worked

a few months before his interview with the psychologist and then again in August of 2013. (Tr. 158, 473). That undermines Plaintiff's claim about how limited he was by his impairments (Tr. 23), which is especially important because "an ALJ's credibility determinations about the claimant are to be given great weight." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007).

Finally, Plaintiff argues that the ALJ's assessment of his residual functional capacity did not take account of Plaintiff's "true mental and cognitive abilities," including his problems with math, reading, writing, answering questions, and recalling dates. (Doc. # 11-1 at 12). Specifically, Plaintiff argues that the residual functional capacity should have included that Plaintiff "could benefit from supervised training and would not be able to manage his own funds," an opinion of the state agency physician Dr. Edwards. (*Id.* at 13). But the residual functional capacity determination specified that Plaintiff "is limited to simple, routine work, without high stress, defined as no production rates or strict time limits and only occasional contact with the public." (Tr. 21-22). That conclusion is supported by substantial evidence, and there is no need to include other information.

### 2. The ALJ's opinion at Step 5 is not supported by substantial evidence.

Plaintiff's second claim of error is that the VE's testimony in response to the ALJ's hypothetical at Step 5 cannot serve as substantial evidence because the hypothetical did not accurately portray Plaintiff's mental and physical impairments. Because the hypothetical was based on the residual functional capacity determination and because that determination was supported by substantial evidence, this argument fails. *See Jones*, 336 F.3d at 477-48 ("[I]t was entirely proper for the ALJ to present the vocational expert with

the hypothetical he constructed, which did not reflect Ms. Jones's complaints, including the constant crying spells, since the hypothetical was supported by substantial evidence in the record.").

Finally, Plaintiff argues that the ALJ erred by misidentifying his level of education as "limited" (a 7th to 11th grade level, 20 C.F.R. § 404.1564(b)(3)), instead of "marginal" (6th grade level or below, 20 C.F.R. § 404.1564(b)(2)), when the "marginal" determination was in the previous ALJ's decision and the ALJ did not explain her departure from the prior conclusion. (Tr. 24, 38). Plaintiff testified at his hearing that he quit school in the fifth grade, at age 14, and that he only attended school two or three days a week because he could not do the work. (Tr. 811, 824-25). There is also record evidence that he had difficulty with math and could not calculate 3 plus 4, 7 times 9, or $1 minus 17 cents. (Tr. 475, 478). The Commissioner does not dispute that the ALJ misidentified the educational level, but instead argues that Plaintiff has not shown that "the jobs identified by the vocational expert required a higher level of education than he possessed." (Doc. # 12 at 9). But the burden is not on the claimant at Step 5. Rather, it is the Commissioner's burden to identify a significant number of jobs that Plaintiff could perform considering his age, education, work experience, and residual functional capacity. *Jones*, 336 F.3d at 474. Here, the ALJ posed a hypothetical to the VE that limited Plaintiff to "simple, routine work, without high stress, defined as no production rates or strict time limits and only occasional contact with the public." (Tr. 21-22). In her written decision, the ALJ gave "great weight" to the assessment of the evaluating psychologist, who opined that Plaintiff "retained the ability to understand, remember, and carry out simple instructions involving one to two-step

commands." (Tr. 23). That assessment was "consistent with the overall medical record," according to the ALJ. (*Id.*)

However, the Commissioner limits her response to the job of garment bagger, one of the four jobs offered by the VE, to demonstrate compliance with those requirements. (Doc. # 12 at 9). The garment bagger job has a General Educational Development reasoning level of one, which requires a worker to "[a]pply commonsense understanding to carry out simple one-or two-step instructions" and "[d]eal with standardized situations with occasional or no variables." Dictionary of Occupational Titles (DOT), App. C, § III, 1991 WL 688702. According to the VE, there are 2,000 garment bagger jobs in the region (which includes West Virginia, Kentucky, and Ohio) and 21,000 jobs nationally. (Tr. 25).

The question for the Court is whether the ALJ's conclusion that work exists in significant numbers was supported by substantial evidence, given that only the garment bagger job appears to fit Plaintiff's education level.[1] In this case, however, the ALJ did not consider specifically whether 2,000 garment bagger jobs regionally and 21,000 nationally is a "significant number." Instead, the ALJ considered all four of the jobs posed by the VE together. (Tr. 25). The Sixth Circuit has held that there is no "special number which is to be the boundary between a 'significant number' and an insignificant number of jobs." *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988). Instead, it is meant to be a case-by-case

---

1. Although the Commissioner's Cross-Motion for Summary Judgment explains the educational requirements for the garment bagger job, it does not address the requirements for any of the three other jobs offered by the VE. Nor does the ALJ's opinion. The Court notes that the other light work option, the garment sorter job, is listed at math level two, which includes the ability to "add, subtract, multiply, and divide all units of measure," "perform the four operations with like common and decimal fractions," and "perform arithmetic operations involving all American monetary units." DOT 222.687-014, 1991 WL 672131. None of those arithmetic operations would be consistent with the record evidence of Plaintiff's abilities, which may be why the Commissioner's brief limited its discussion to the garment bagger job.

determination that requires the ALJ to consider numerous factors.  *Id.*  The Court recognizes that the ALJ may well conclude that 2,000 jobs in Kentucky, West Virginia, and Ohio is a "significant number" in the context of this case.  But this Court's job is to review the ALJ's conclusions regarding the five-step process, not to make factual determinations and conclusions in the first instance.  Because the ALJ's decision relies on an inconsistent educational determination without explanation, because it is not clear whether 2,000 regional and 21,000 national garment bagger jobs is a "significant number," and because the Commissioner bears the burden at this stage, the Court finds that the decision at Step 5 is not supported by substantial evidence and must be remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g).

### III.   CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)   Plaintiff's Motion for Summary Judgment (Doc. # 11) is hereby **GRANTED**;

(2)   Defendant's Motion for Summary Judgment (Doc. # 12) is hereby **DENIED**;

(3)   This action is hereby **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g) with instructions to adequately address whether significant numbers of jobs exist in the national economy for an individual of claimant's age, education, work experience, and residual functional capacity, consistent with this Memorandum Opinion and Order; and

(4)   A Judgment will be entered contemporaneously herewith.

This 31st day of March, 2017.



Signed By:
*David L. Bunning*   DB
United States District Judge